UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| DAVID ARMSTRONG,<br><br>    Plaintiff,<br><br>    v.<br><br>THE CITY OF SAN JOSE, et al.,<br><br>    Defendants. | Case No. 5:16-cv-02938-EJD<br><br>**ORDER DENYING DEFENDANTS' MOTION TO DISMISS**<br><br>Re: Dkt. Nos. 15, 15-1 |

Plaintiff David Armstrong brings this action against the City of San Jose and several of its police officers for civil rights violations under 42 U.S.C. § 1983. Before the Court is Defendants' motion to dismiss under Fed. R. Civ. P. 12(b)(6). Defendants' motion will be DENIED.

**I. BACKGROUND**

Armstrong runs MediMarts, a medical cannabis collective in San Jose (the "City"). Complaint ("Compl.") ¶ 11, Dkt. No. 1. In 2010, the City enacted a sales tax on medical cannabis, which Armstrong refused to pay. Id. ¶ 12–14. In 2014, the City sued Armstrong and MediMarts for nonpayment. Id. ¶ 15. Armstrong cross-complained for constitutional violations and later brought a separate suit challenging the tax's validity.[1] Id. When asked about Armstrong's challenge, the City's mayor commented that his message to Armstrong was: "Pack up. It's time to move on—and pay up on your way out." Id. ¶ 16.

---

[1] Under Fed. R. Evid. 201, the Court GRANTS the City's Request for Judicial Notice, Dkt. No. 15-1, comprising papers filed in Armstrong's other litigation against the City (Exs. 1–3) and excerpts of the San Jose City Charter (Ex. 4).

1
Case No.: 5:16-cv-02938-EJD
ORDER DENYING DEFENDANTS' MOTION TO DISMISS

On March 9, 2015, one of Armstrong's neighbors called the police to report that a pickup truck was driving recklessly. Id. ¶ 23. The police told the caller that they would not take action or open an incident report. Id. On April 17, another one of Armstrong's neighbors discovered that the same truck was registered to MediMarts. Id. ¶ 24. That neighbor reported to police (and to an unknown city councilmember) that a truck registered to MediMarts was driving recklessly. Id.

At around 6:00 a.m. on May 14, five police officers—in one unmarked car, three marked cars, and one helicopter—began surveilling Armstrong's residence in Morgan Hill (which is beyond the San Jose city limits). Id. ¶ 26–27. After about an hour and a half, Armstrong left to drive to San Jose. Id. An officer followed him in an unmarked car for about seven miles and saw him commit several traffic violations. Id. ¶ 28–29. The officer stopped him and issued a citation for misdemeanor reckless driving. Id. ¶ 29–30. Three other marked police cars joined the stop. Id. ¶ 29.

On March 3, 2016, the same officer (with thirteen others) "again conducted a traffic enforcement sting" targeting Armstrong. Id. ¶ 33. After pulling him over, an officer pushed him against a vehicle "with such force that it dented the body panel. Mr. Armstrong sustained injuries to his shoulder, arm, and knee, for which he required medical treatment." Id. ¶ 34. The officer arrested him for misdemeanor reckless driving. Id. ¶ 36. Police also notified the DMV that Armstrong's license should be suspended under California Vehicle Code § 21061.[2]

## II. LEGAL STANDARD

### A. 12(b)(6) Motion to Dismiss

Dismissal under Fed. R. Civ. P. 12(b)(6) "is proper only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). The complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Ashcroft v. Iqbal, 556

---

[2] This section allows an officer to issue a notice of reexamination when a driver exhibits "serious physical injury or illness or mental impairment or disorientation" that "presents a clear or potential danger or risk of injury to the person or others if that person is permitted to resume operation of a motor vehicle."

2
Case No.: 5:16-cv-02938-EJD
ORDER DENYING DEFENDANTS' MOTION TO DISMISS

U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

**B. Section 1983**

42 U.S.C. § 1983 provides a tort remedy against "[e]very person who, under color of [state law] subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws."

**III. DISCUSSION**

Armstrong claims that Defendants (1) selectively enforced criminal laws against him in violation of the Equal Protection Clause of the Fourteenth Amendment (Compl. ¶¶ 39–47); (2) used excessive force during the March 3, 2016 traffic stop in violation of the Fourth Amendment (Compl. ¶¶ 48–55); and (3) selectively enforced criminal laws against him in retaliation for exercising his First Amendment rights to speak freely and to petition the courts for redress of grievances (Compl. ¶¶ 56–63).

**A. Fourteenth Amendment**

Armstrong argues that the City deprived him of equal protection of the laws by selectively enforcing California Vehicle Code § 23103(a)[3] against him. Compl. ¶¶ 39–47.

To prevail on an equal protection claim based on selective enforcement, "a plaintiff must demonstrate that enforcement had a discriminatory effect and the police were motivated by a discriminatory purpose." Rosenbaum v. City & Cty. of S.F., 484 F.3d 1142, 1152 (9th Cir. 2007) (citing Wayte v. United States, 470 U.S. 598, 608 (1985)). "Enforcement may be shown through a variety of actual or threatened arrests, searches and temporary seizures, citations, and other coercive conduct by the police." Lacey v. Maricopa Cty., 693 F.3d 896, 920 (9th Cir. 2012). The plaintiff "must show that similarly situated individuals . . . were not prosecuted." United States v. Armstrong, 517 U.S. 456, 465 (1996). The U.S. Supreme Court has "recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for

---

[3] "A person who drives a vehicle upon a highway in willful or wanton disregard for the safety of persons or property is guilty of reckless driving."

3
Case No.: 5:16-cv-02938-EJD
ORDER DENYING DEFENDANTS' MOTION TO DISMISS

the difference in treatment." Vill. of Willowbrook v. Olech, 528 U.S. 562, 564 (2000).

The City argues that Armstrong "does not identify any similarly-situated class of persons or control group, let alone facts as to how he is similarly situated to such a group and how Defendants treated him differently." Defs.' Mot. to Dismiss ("MTD") at 7, Dkt. No. 15. But Armstrong alleges that during the first six months of 2016, when he was first stopped and cited, the City received more than 3,000 emergency calls reporting reckless driving. Compl. ¶ 21. The only report that led to an arrest or citation was the one involving Armstrong, and only after he was identified as the vehicle's owner. Id. He further alleges that in March 2016, when fourteen officers orchestrated the sting that led to Armstrong's arrest, the City's police department announced that it was understaffed at "crisis levels." Id. ¶ 22. According to Armstrong, the City selectively enforced traffic laws against him "as a way to bully him because of his alleged failure to pay the local [cannabis] tax and because of the continued exercise of his legal rights in court." Id. ¶ 10.

Armstrong has stated a claim for an equal protection violation based on the City's selective enforcement of traffic laws: the "similarly situated individuals" are the other reckless drivers that the City decided not to pursue, and the "discriminatory purpose" is the City's intent to retaliate against Armstrong for his challenge to the cannabis tax.

The City cites several California cases for the proposition that "an equal protection violation does not arise whenever officials 'prosecute one and not [another] for the same act.' " MTD at 7–8 (quoting Murgia v. Mun. Ct., 15 Cal. 3d 286, 297 (1975)). But Armstrong's claim goes further: he argues that the City prosecuted him, and not others, because it intended to single him out. Discriminatory enforcement is actionable. See, e.g., Murgia, 15 Cal. 3d at 297 ("the equal protection guarantee . . . prohibits prosecuting officials from purposefully and intentionally singling out individuals for disparate treatment on an invidiously discriminatory basis").

### B. Fourth Amendment

#### 1. Excessive Force

Armstrong argues that the officer's use of force during his arrest was an unreasonable seizure of his person. Compl. ¶¶ 48–55. An officer's use of force during an arrest violates the

4

Case No.: 5:16-cv-02938-EJD
ORDER DENYING DEFENDANTS' MOTION TO DISMISS

Fourth Amendment if it was not objectively reasonable under the circumstances. Graham v. Connor, 490 U.S. 386, 396–97 (1989). Here, the parties disagree only about the amount of force that the officer used. The City calls it "a mere push" (MTD at 11; Reply at 4); Armstrong calls it a push "with such force that it dented the body panel" of a vehicle, causing "injuries to his shoulder, arm, and knee, for which he required medical treatment" (Compl. ¶ 34). On a motion to dismiss, the Court accepts the plaintiff's facts as true, as long as they are plausible. Twombly, 550 U.S. at 570. Armstrong has stated a claim for a Fourth Amendment violation based on the officer's use of force.

### 2. Qualified Immunity

The City argues that the officer who arrested Armstrong is immune from personal liability. MTD at 11–13. Qualified immunity shields government officials from liability "unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." Ashcroft v. al-Kidd, 563 U.S. 731, 735 (2011). Armstrong has met both requirements. First, he has pled facts showing that the officer's use of force violated his Fourth Amendment right to be free from unreasonable seizure. Specifically, he alleges that the officer pushed him into a vehicle "with such force that it dented the body panel," and that he suffered injuries that required medical attention. Compl. ¶¶ 34–35. He alleges that the level of force the officer used was not justified under the circumstances of the traffic stop. Id. Second, the Court agrees that the right to be free from excessive force was clearly established when the arrest occurred. Compl. ¶ 50 (alleging that the officer "acted under color of law to deprive Plaintiff of the clearly-established right to be free from the unreasonable seizure of his person"); Pl.'s Opp'n to Mot. to Dismiss at 8 ("there can be no question that the right to be free from excessive force during a misdemeanor traffic stop was clearly established in 2015"). These facts, taken as true, establish that the officer is not entitled to qualified immunity. See Grant v. City of Long Beach, 315 F.3d 1081, 1088–89 (9th Cir. 2002) (on a motion to dismiss, the court must accept allegations in the complaint as true in determining whether qualified immunity applies).

### C. First Amendment

Armstrong argues that City selectively enforced California Vehicle Code § 23103(a) against him in retaliation for exercising his rights to speak freely and to petition the courts for redress of grievances. Compl. ¶¶ 56–63.

To establish a claim of retaliation in violation of the First Amendment based on police conduct, a plaintiff must show (1) "that the officers' conduct would chill a person of ordinary firmness from future First Amendment activity" and (2) "that the officers' desire to chill his speech was a but-for cause of their allegedly unlawful conduct." Ford v. City of Yakima, 706 F.3d 1188, 1193 (9th Cir. 2013).

Armstrong has met both requirements. First, his arrest had a chilling effect. Id. at 1193 ("This Court has recognized that a retaliatory police action such as an arrest or search and seizure would chill a person of ordinary firmness from engaging in future First Amendment activity."). Whether there was probable cause for his arrest is irrelevant here. Skoog v. Cty. of Clackamas, 469 F.3d 1221, 1235 (9th Cir. 2006) ("a right exists to be free of police action for which retaliation is a but-for cause even if probable cause exists for that action"). Second, he has pled facts showing that retaliation was the but-for cause of the arrest. See, e.g., Compl. ¶¶ 16 (the City's mayor expressed animosity towards Armstrong), 21 (out of more than 3,000 reports of reckless driving, the only report that resulted in an arrest or citation was the one involving Armstrong), 23–27 (police refused to act on a reckless driving complaint until they learned that the driver was Armstrong).

### D. Punitive Damages

The City argues that Armstrong cannot seek punitive damages because he has not shown that Defendants intentionally or recklessly violated his constitutional rights. MTD at 17; Smith v. Wade, 461 U.S. 30, 56 (1983) ("a jury may be permitted to assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others"). The Court disagrees. Armstrong has pled facts sufficient to allege that the City and its police officers

intentionally committed the violations discussed above. He alleges that the City bears personal animosity towards him because of their ongoing disputes, including Armstrong's refusal to pay the cannabis tax and his challenges to the tax's validity. Compl. ¶¶ 8–16. Armstrong further alleges that, despite a crisis of understaffing, the City and its police officers conducted two sting operations targeting him (the first involving four police cars and a helicopter, and the second involving fourteen officers). Id. ¶¶ 23–38. He alleges that, out of more than 3,000 reports of reckless driving, the only report that led to an arrest or citation was the one involving Armstrong. Id. ¶ 21. These facts, taken as true for the purposes of this motion, may show that Defendants intentionally violated Armstrong's constitutional rights.

## IV. CONCLUSION

The City's motion to dismiss is DENIED.

**IT IS SO ORDERED.**

Dated: January 17, 2017

_____
EDWARD J. DAVILA
United States District Judge